ACCUTEMP, INC., APPELLANT, *v.*
LONGVIEW STATE HOSPITAL, APPELLEE.

(No. 82AP-247—Decided June 14, 1983.)

*Lerner, Sampson & Rothfuss Co., L.P.A., Mr. Richard M. Rothfuss* and *Mr. J. Michael Debbeler,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Nancy J. Miller,* for appellee.

NORRIS, J. This case is before us on plaintiff's appeal from a judgment of the Court of Claims dismissing plaintiff's complaint for failure to state a cause of action, and entering judgment for defendant-appellee, Longview State Hospital.

Plaintiff-appellant, Accutemp, Inc., pursuant to alleged agreements with defendant, at various times provided, installed and repaired air conditioning equipment in a building located at Longview State Hospital and controlled by the Department of Mental Health. Plaintiff claimed defendant refused to pay for part of the equipment installed, and for services provided by plaintiff. In its complaint, plaintiff sought recovery on the alternative theories of breach of contract and *quantum meruit* or estoppel.

Plaintiff asserts the following assignments of error in support of its appeal, which are interrelated and will be considered together:

"1. The Court of Claims erred in determining that competitive bidding was required for contracts with Longview State Hospital, an institution under the control of the Department of Mental Health.

"2. The Court of Claims erred in granting the Motion to Dismiss for failure to state a claim upon which relief can be granted filed by the Defendant-Appellee Longview State Hospital since it is not apparent on the face of the Complaint of the Plaintiff-Appellant that there is no set of facts which could be proved in support of the plaintiff's Complaint."

In its motion to dismiss the complaint, defendant contended that any contract of this nature which is entered into without competitive bidding is void. In addition,

defendant contended that the theories of *quantum meruit,* unjust enrichment, and estoppel do not apply against the state in instances where recovery cannot be had upon a contract which was not awarded pursuant to statutory bidding procedures.

The Court of Claims specifically found that the contract in question was governed by R.C. 123.15, and that under that statute the contract had to be entered into with the Department of Administrative Services and only after compliance with competitive bidding procedures. The court concluded that, since plaintiff did not plead compliance with the statute, it could prove no set of facts under which it would be entitled to relief on either count of its complaint and dismissed the action.

While R.C. 123.15 sets out the general rule requiring the Department of Administrative Services to award public works contracts through competitive bidding, other sections of the Revised Code provide for exceptions. For example, R.C. 123.01 excludes certain contracts from the jurisdiction of the Department of Administrative Services:

"(A) The department of administrative services * * * shall exercise the following powers:

"* * *

"(3) To make contracts for and supervise construction of any projects and improvements, or construction and repair of buildings under the control of the state government, or any department, office, or institution thereof, except contracts for the repair of buildings under the management and control of the departments of * * * mental health * * * which contracts shall be made and entered into by the directors of * * * mental health * * *.

"* * *

"(C) Purchases for, and the custody and repair of, buildings under the management and control of the departments of * * * mental health * * * are not subject to the control and jurisdiction of the department of administrative services."

Pursuant to R.C. 123.01(A)(3), then, only the Director of the Department of Mental Health has the authority to contract for the repair of buildings under the control of the department. In addition, R.C. 123.01(C) provides that the Department of Administrative Services has no jurisdiction with respect to "[p]urchases for, and the * * * repair of, buildings * * *" under the control of the Department of Mental Health.

Unfortunately, the Court of Claims did not refer to either R.C. 123.01(A)(3) or R.C. 123.01(C). At this stage of the case, every doubt must be resolved in favor of plaintiff's complaint having stated a claim and it must be assumed that proof of the allegations is possible. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223].

The remaining issue, then, is whether the term "repair of buildings" includes repair of a fixture or is limited to repair of the entire building or at least to some structural portion.

Defendant contends that installation and service work on air conditioning equipment does not constitute repair of a building. Under that theory, as logically extended, repair of a leaking roof might not be included although replacement of the roof might. And, repair of a lighting unit, which is clearly a fixture and a part of the building, would not constitute repair of a building under this type of reasoning. Under this approach, the purpose of the statute would be to permit the Department of Mental Health to take care of only extraordinary types of repairs, leaving day-to-day maintenance repairs to the Department of Administrative Services. We reject that interpretation of "repair of buildings."

It may be that the work involved here was the type of maintenance necessary for day-to-day operation — whether it in-

volved replacement of a unit or installation of an additional unit. But, even if that be the case, it would not preclude plaintiff's proving that the contract involved repair to the building. A building necessarily must contain fixtures. It follows that the term "repair of buildings" includes both repair and replacement of fixtures, and may in appropriate instances include even installation of new fixtures.

From the exhibits attached to the complaint, it is apparent that plaintiff's claim centered around installation of a 7.5-ton air conditioning compressor, and the repair of an air conditioning unit which utilized a 5.0-ton compressor. Air conditioning units of this size could be regarded only as fixtures and, therefore, a part of the building to which they were attached. Clearly, then, plaintiff pleaded contracts which called for purchases for buildings, or repair of buildings, under the control of the defendant. Accordingly, the contracts were not the subject of the competitive bidding requirements cited by the trial court, and plaintiff did not fail to state a claim for which relief could be granted for the reason stated by the court.

The assignments of error are sustained, the judgment of the Court of Claims is reversed, and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed and
cause remanded.*

WHITESIDE, P.J., concurs.

MOYER, J., dissents.

MOYER, J., dissenting. I dissent from the opinion of the majority.

R.C. 123.01(A)(3) which reads, in part, "* * * contracts for the repair of buildings under the management and control of the departments of * * * mental health * * * shall be made and entered in-

to by the directors of * * * mental health * * *" and which appears to support plaintiff's claim that the Department of Mental Health had the authority to contract with plaintiff does not apply to this case because the installation of a compressor in an air conditioning system is not a "repair" of a building. Whether plaintiff repaired an existing air conditioning system or installed part of a new system, it repaired an air conditioner and not a building. While the majority's characterization of the air conditioner as a "fixture" is an accurate description in distinguishing between personal and real property, a reading of the statutes causes me to conclude that the General Assembly not only failed to make such a distinction but also did not intend that result. In view of the statutory scheme and the limited grant of power to the Department of Mental Health, this is not an unduly restrictive interpretation of R.C. 123.01(A)(3).

The first paragraph of R.C. 123.15 reads:

"The director of administrative services may enter into contracts with proper persons for the performance of labor, the furnishing of materials, or the construction of any structures and buildings necessary to the maintenance, control, and management of the public works of the state, or any part thereof."

This section does not resolve the issue presented by this case since it is more general and was enacted earlier than the two statutes which we will next consider. According to well-established principles of statutory construction, specific statutory provisions prevail over conflicting general statutes (see R.C. 1.51) and later enactments prevail over conflicting earlier statutes (R.C. 1.52).

The last statute which could conceivably be construed to support plaintiff's argument is R.C. 123.01(C). This section reads, in part:

"Purchases for, and the custody and repair of, buildings under the management and control of the departments of

* * * mental health * * * are not subject to the control and jurisdiction of the department of administrative services."

This statute appears to deprive the Director of Administrative Services of the authority to enter into contracts for purchases for the Department of Mental Health's buildings. "Purchases," however, cannot be construed to mean *all* purchases for two reasons. Since R.C. 5119.31 gives the Director of Administrative Services the authority to make contracts for supplies, the purchase of supplies is apparently a purchase which is not covered by R.C. 123.01(C).

In addition, according to the rule of statutory construction that parts of a statute should be construed so that they are consistent with one another, the word "purchases" in R.C. 123.01(C) must be interpreted so that it does not include improvements such as plaintiff's air conditioner. The General Assembly used the term "improvements" elsewhere in R.C. 123.01. Thus, if they had meant to deprive the Director of Administrative Services of his authority to contract for improvements *and* purchases, they would have said "purchases and improvements" in R.C. 123.01(C). I, therefore, conclude that R.C. 123.01(C) does not remove contracts for improvements from the control and jurisdiction of the Department of Administrative Services.

Since no statute gives the Department of Mental Health the authority to enter into contracts for improvements, R.C. 123.01(A) applies to this case. R.C. 123.01(A)(3) gives the Department of Mental Health the authority to make contracts for repairs to buildings, but provides that the Department of Administrative Services has the power "[t]o make contracts for * * * any projects and improvements * * * of buildings under the control of the state government, or any department, office, or institution thereof * * *." The statutory scheme contemplates a broad grant of power to the Department of Administrative Services and limited, smaller grants of authority to the various departments. Thus, the Department of Administrative Services has the statutory authority to enter into contracts for improvements to defendant's buildings.

This statutory interpretation makes the Department of Administrative Services the owner upon whom devolves the duty of installing cooling equipment according to the language of R.C. 153.01. That section provides that the owner shall cause plans to be made, and subsequent Revised Code sections outline the procedures which the Department of Administrative Services must follow in awarding such contracts. R.C. 153.06 details the form the proposals must take; R.C. 153.07 requires public notice regarding when and where proposals will be received; and R.C. 153.08 specifies that contracts shall be awarded to the lowest bidder. None of these mandatory statutory procedures was complied with in this case. State departments and agencies only have the limited power to contract which is delegated to them by the state legislature. See Section 20, Article I, Ohio Constitution; *Cincinnati, Wilmington & Zanesville RR. Co.* v. *Commrs. of Clinton Cty.* (1852), 1 Ohio St. 77, 85-86; *Allied Delivery System Co.* v. *Hamilton* (Apr. 1, 1982), Franklin App. No. 81AP-727, unreported; Vaubel, Relief Under a Defective Municipal Contract in Ohio (1968), 2 Akron L. Rev. 20, 30. The following holding of the Ohio Supreme Court is as valid today as it was in 1918:

"Where a statute prescribes the mode of exercise of the power therein conferred upon a municipal body, the mode specified is likewise the measure of the power granted, and a contract made in disregard of the express requirements of such statute is not binding or obligatory upon the municipality." *Frisbie Co.* v. *City of East Cleveland* (1918), 98 Ohio St. 266, paragraph one of the syllabus. See, also, *Ludwig Hommel & Co.* v. *Village of Woodsfield* (1927), 115 Ohio St. 675,

paragraph two of the syllabus; *Lancaster v. Miller* (1898), 58 Ohio St. 558, paragraph one of the syllabus; *McCloud & Geigle v. Columbus* (1896), 54 Ohio St. 439.

Thus, any contract between plaintiff and defendant was void *ab initio* and plaintiff cannot recover on the basis of a contract. *Allied Delivery System Co., supra,* at page 8. The only remaining issue is whether defendant is liable on a theory of *quantum meruit* or whether defendant is estopped to deny the validity of the contract.

Provisions requiring public notice and competitive bidding have long been recognized as measures designed to protect taxpayers against "private rapacity and official indifference." *McCloud & Geigle, supra,* at 452. Compliance with these statutes is, as we have noted, mandatory. "The statutes are notice to the world as to the extent of the powers of the * * * [Department of Administrative Services], and the * * * [plaintiff] is bound by that notice," *Buchanan Bridge Co.* v. *Campbell* (1899), 60 Ohio St. 406, 425, "to know the extent of the power and authority of the * * * [state agency] to contract," *Ludwig Hommel & Co., supra,* at 683, citations omitted.

To allow plaintiff to recover on a theory of *quantum meruit* or to claim that defendant is estopped to deny the validity of the contract would be to sanction the evasion of the mandatory statutory provisions which were enacted to protect taxpayers. The defendant is not estopped to deny the validity of the contract. *Lancaster, supra,* paragraph three of the syllabus.

Since plaintiff's complaint did not allege compliance with the statutory bidding procedures, there is no set of facts which would allow plaintiff to recover on its complaint. Thus, the trial court correctly granted defendant's Civ. R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. I would overrule the assignments of error and affirm the judgment of the trial court.